## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEVIN WAYNE BENNETT,**

         **Petitioner,**

    **v.**                               **Civil Action No. 1:10cv88**
                                         **Criminal Action No. 1:08cr78-3**

**UNITED STATES OF AMERICA,**           **(Judge Keeley)**

         **Respondent.**

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

On June 3, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Dkt.# 832). The Government was ordered to answer on June 7, 2010 (Dkt.# 834) and filed its response on August 3, 2010. (Dkt.# 843). Petitioner replied on August 24, 2010. (Dkt.# 847).

## II. FACTS

### A. Conviction and Sentence

On January 13, 2009, petitioner signed a plea agreement by which he agreed to plead guilty to Count Sixty-Five of the indictment, maintaining a drug-involved premise, in violation of Title 21, United States Code, § 856(a)(2). In the agreement, petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 12. The above paragraph not withstanding, the defendant will retain his appellate rights and rights to collaterally attack his conviction only with respect to any sentence imposed above the applicable Guideline range using a base offense level 27 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the applicable advisory total offense level. The United States will retain its appellate rights with respect to any sentence imposed.

(Dkt.# 459 at 3 - 4).

On February 5, 2009, petitioner entered his plea in open court. (Dkt.# 840). Petitioner testified that he was 36 years old and had attended school until the 11th grade but then earned a GED. (Id. at 12). Petitioner testified that he could read, write and understand the English language. (Id.). He denied any physical or mental disability that might affect his ability to fully participate in the proceedings as well as any recent use of alcohol, illegal drug, or over-the-counter medication. (Id. at 12 - 14). He did report having taken his prescribed daily doses of Vistaril for anxiety and Elavil for sleep within the previous 24 hours. (Id. at 14 - 15). However, he denied that he suffered any effect from either drug that would affect his ability to fully participate in the hearing. (Id. at 15). He testified that he understood and agreed with all the terms and conditions of the plea agreement, and had had an opportunity to read, fully discuss with counsel, and understand it before signing it. (Id. at 18 - 26). The Court specifically asked petitioner if he understood that under the terms of the waiver of his appellate and post-conviction relief rights, he only retained those rights if the sentence he ultimately received was based on a base offense level of 27 or higher, and petitioner said that he did. (Id. at 20 - 21 and 31). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 31 - 35). During the plea hearing, the Government presented the testimony of Lieutenant Brian Purkey, Commander of the Harrison-Lewis County Drug and Violent Crimes Task Force, to establish a factual basis for the plea. (Id. at 35 - 39). The petitioner did not contest the factual basis of the plea, and specifically stated that he agreed with the witness' testimony. (Id. at 39).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 65 of the indictment. (Id. at 41). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 26 - 27 and 41). In addition, he testified that the plea was not the result of any promises other than

those contained in the plea agreement. (Id. at 26).  The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 17 - 23).  Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty.  (Id. at 41 - 42).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, and that the petitioner understood the nature of the charge and the consequences of pleading guilty.  The petitioner did not object to the Court's finding.

On June 4, 2009, the petitioner appeared before the Court for sentencing.  After considering several factors, including the circumstances of the crime, petitioner's extensive criminal history, likelihood of recidivism, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 70 months imprisonment with credit for time served since September 25, 2008, followed by three years supervised release.  (Dkt.# 839 at 21 - 22). The Court recommended that petitioner participate in the Bureau of Prison's ("BOP") 500 hour residential drug abuse abuse program ("RDAP") and that he receive a full psychiatric work up and evaluation.  (Id. at 28).  The Court noted that because petitioner's base offense level was found to be 26, he did not retain his appellate and collateral attack rights.  (Id. at 25).

**B.  Appeal**

Petitioner did not pursue a direct appeal.

**C.  Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 832)**

Petitioner raises two grounds in his petition:

1) The District Court erroneously enhanced his sentence by employing 2D1.1(c) factors to establish his base offense level; and

2) counsel was ineffective for failing to investigate the basis on which petitioner's base offense

was calculated, and for failing to object when petitioner's relevant conduct was used to establish his base offense.

As relief, petitioner requests that the Court set aside his plea and sentence.

**Government's Response (Dkt.# 843)**

Petitioner waived his collateral attack rights incident to his plea agreement and therefore his § 2255 motion should be dismissed.

Petitioner's claim that the District Court erred in sentencing him is merely a claim that there was a misapplication of the sentencing guidelines. It is well settled that sentencing issues generally cannot be raised in a § 2255 motion, unless a challenge is being raised that a sentence is in excess of the maximum authorized by law. Because petitioner's sentence is well within the maximum, his motion should be dismissed. Further, the claim is procedurally defaulted, as it could have been raised on direct appeal. Petitioner has neither demonstrated cause nor shown prejudice for not so raising it and thus this claim should be dismissed.

Petitioner's claim that counsel was ineffective for not investigating and preparing to adequately represent him has no merit. The Midgett[1] case cited by petitioner in support of his argument that the U.S. Sentencing Guidelines Drug Quantity Table at U.S.S.G. § 2D1.1(c) was erroneously used to calculate his base offense level, rather than the Base Offense Level set forth in U.S.S.G. § 2D1.8(a)(2), was correct at the time of its 1992 ruling. However, since that opinion was entered, § 2D1.8 has been amended twice, in 1992 and 2002, enacting changes in how the Base Offense Level is calculated for violations of 21 U.S.C. §856. Moreover, this Court has determined, and the Fourth Circuit has upheld, that U.S.S.G. § 2D1.1 is the applicable guideline to be used to determine the sentence for defendants who, like petitioner, are convicted of maintaining a drug-involved residence and who also willingly participate in the

---

[1] U.S. v. Midgett, 972 F.2d 64 (4th Cir. 1992).

underlying controlled substance offense. See U.S. v. Nuckles, 63 Fed. Appx. 113 (4th Cir. Apr. 22, 2003) (unpublished) *per curiam.* Furthermore, as for petitioner's claim that counsel did not object, counsel did object, arguing that § 2D1.8(a)(2) did not apply because petitioner was not involved in the underlying controlled substance offense, but the Court found otherwise and overruled his objection. Petitioner has failed in his burden under Strickland and his motion should be denied.

**Petitioner's Reply (Dkt.# 847)**

Petitioner reiterates the claims previously made in his § 2255 motion, and for the first time, raises two new grounds, a claim of ineffective assistance of counsel for not explaining the plea agreement's waiver of appellate and collateral attack rights or the impact of relevant conduct and "total offense conduct" on his future sentence. Further, he claims that his plea was not intelligent and voluntary, because he did not understand the essence of it.

**D. Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his sentence, thus barring review of Ground One and Ground Three (b). Petitioner's Ground Two post-plea claim of ineffective assistance of counsel, although falling outside of the waiver, has no merit. Petitioner's Ground Three (a) pre-plea claim of ineffective assistance of counsel, although not waivable, is also untimely but relates back; despite that, it is without merit. His Ground Four claim that his plea was not intelligent and voluntary, although untimely, relates back; further, it is not waivable. However, it also lacks merit.

## III. ANALYSIS

**A.    Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his

sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.      Waiver**

[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the

Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by

> reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th

Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v. Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. <u>Braxton</u>, 358 F. Supp. 2d at 503, n. 2. Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." <u>Id.</u> at 503. (collecting cases).

The unpublished *per curiam* decision in <u>United States v. Morris</u>, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the District Court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 840 at 20 - 21 and 31). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the Government's concessions, he was waiving his right to appeal or to collaterally attack his conviction, as long as his

sentence was within the maximum sentence of not more than twenty years imprisonment, and it was based on a base level determination of 26 or lower. (Id. at 20). Petitioner's base offense level was 26 and he received a sentence of 70 months, or 5.83 years imprisonment - - the lowest end of the guideline. Accordingly, the undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence by filing this § 2255 motion, except for claims of ineffective assistance of counsel arising after the entry of the guilty plea. Thus, a review of petitioner's Ground One claim[2] is precluded, as is Ground Three (b), petitioner's claim that counsel was ineffective prior to the entry of the plea, for not explaining to him the impact of relevant conduct and "total offense conduct" on his sentence.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised a challenge to the validity of the plea itself, and ineffective assistance of counsel claims calling into question the validity of the §2255 waiver, as well as an ineffective assistance of counsel claim arising after the entry of the plea, those claims are excepted from his waiver and will be given review.

## C.      Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of

---

[2] Petitioner's Ground One claim, that the District Court erroneously enhanced his sentence by employing § 2D1.1(c) factors to establish his base offense level, is also not a claim that may be raised in a § 2255 motion. A claim not attacking the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Because an alleged misapplication of statutory sentencing requirements does not constitute a miscarriage of justice, United States v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999) *overruled in part on other grounds by* Dretke v. Haley, 541 U.S. 386, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004), petitioner's claim is barred. See Stewart v. United States, 2006 U.S. Dist. LEXIS 54553 at *13-14 (E.D. Va. July 21, 2006).

reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any ineffective assistance of counsel claims occurring prior to the entry of his guilty plea, except those that "call into question the validity of the plea or the §2255 waiver itself." Braxton, *supra* at 503. Therefore, all of petitioner's remaining claims fall outside the waiver.

**Ground Two: Whether Counsel Was Ineffective After the Entry of the Plea, for Failing to Investigate the Basis for Calculating Petitioner's Base Offense Level, and Failing to Object at Sentencing when Petitioner's Relevant Conduct was used to Establish his Base Offense.**

Petitioner contends that counsel's performance was deficient when he failed to investigate the basis on which his Base Offense Level was calculated, and when he failed to object at sentencing, when petitioner's relevant conduct was used to establish his Base Offense.

Defense counsel has a duty to conduct a pretrial investigation that is "[reasonable] under prevailing professional norms." Strickland, 466 U.S. 668, 688 (1984). A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691; see also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003). Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "In considering claims of ineffective assistance of counsel, we address not what is prudent or inappropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)) (internal quotations omitted). In reviewing the deficiency prong in claims of ineffective assistance of counsel, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90.

Petitioner's claims that counsel failed to adequately investigate the basis on which his base offense level was calculated and failed to object at sentencing, when his relevant conduct was used to establish the same has no merit. United States Sentencing Guideline § 2D1.1 is the applicable guideline used to determine the sentence for defendants who, like petitioner, are convicted of maintaining a drug-involved residence and who also willingly participate in the underlying controlled substance offense. See U.S. v. Nuckles, 63 Fed. Appx. 113 (4th Cir. Apr. 22, 2003) (unpublished) *per curiam.* The calculation of petitioner's base offense level was set forth in detail in his PreSentence Investigation Report ("PSR"). At sentencing, petitioner testified under oath that he and counsel had reviewed the PreSentence Report

("PSR") together, that counsel had explained the information contained within it and answered all his questions satisfactorily. (Dkt.# 839 at 5). Moreover, counsel filed two objections to it. The first contested whether petitioner's instant offense was committed within two years of his release from custody, such that the addition of two criminal history points pursuant to U.S.S.G. § 4A1.1(e) should not apply. This objection was overruled as moot at the beginning of the sentencing hearing, given the proof provided by the Probation Officer. Counsel's second objection was that § 2D1.8(a)(2) did not apply because petitioner should have been given credit for being a minor participant in the underlying controlled substance offense, entitling him to a 4-level reduction under U.S.S.G. §2D1.8(a)(2), was also overruled, over counsel's vigorous argument, because petitioner was determined to be responsible for five separate controlled buys during a four-month period. (Id. at 12 - 13).

Counsel's representation was effective and appropriate. Despite petitioner's contention, counsel did object, but because the evidence was that petitioner was anything but a minor participant, the Court found otherwise and overruled his objection. Counsel is not ineffective merely because the court overruled his objection. The Petitioner himself did not object to the testimony regarding the amount of drug relevant conduct when given the opportunity. Petitioner's own criminal history and active participation in the underlying controlled substance offense earned him the additional criminal history points that affected his sentence, not any deficiency by counsel. Petitioner has failed to meet his burden under Strickland and this claim should be denied.

**Grounds Three (a): Whether Counsel Was Ineffective for Not Explaining the Plea Agreement's Waiver of Appellate and Collateral Attack Rights.**

In his Ground Three (a) claim, petitioner alleges for the first time in his reply that counsel was ineffective because he failed to explain the plea agreement's waiver of appellate and collateral attack rights to him. He contends that "under no reasonable set of circumstances would petitioner waive his constitutional right to an appeal, that would be close to ludicrous." (Dkt.# 847 at 2). He asserts that he

was never made aware of the loss of his appellate and/or collateral attack rights, that "his plea agreement was handed to him, with directions to sign it and that is what he did." (Id.).

Petitioner's claim that counsel was ineffective for not explaining the waiver of his appellate and collateral attack rights[3] is belied by his own sworn statement at his Rule 11 hearing:

> THE COURT: **Did you and Mr. Wallace discuss that under certain circumstances you may have the right to file what is called commonly a writ of habeas corpus petition, a motion to challenge the sentence and how it was calculated, using a motion under 28 U.S.C. Section 2255?**
>
> THE DEFENDANT: **Yes**.
>
> THE COURT: **Did you and Mr. Wallace discuss, under paragraph eleven of your agreement - - I'm sorry paragraph twelve of your agreement, that if the District Judge, in establishing your actual sentence, imposes an actual sentence which is equal to equivalent - - the equivalent of a guideline based sentence using a base offense level of 26 or below, you give up your right to appeal and you give up your right to collaterally challenge that sentence and how it was calculated. Do you understand that, sir?**
>
> THE DEFENDANT: **Yes**.
>
> THE COURT: **You only reserve those rights if the sentence is equal to, or greater than a base offense level guideline driven sentence at 27 or higher. You understand**

---

[3] Before analyzing the merits of this claim, the undersigned finds that it is barred by the one-year statute of limitation set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). Petitioner raised this claim for the first time in his reply, construed here as an amended § 2255 motion, filed without leave of court. His reply/amended motion was dated August 22, 2010 and was filed August 24, 2010, after the government had already filed its responsive pleading. However, petitioner's conviction became final one year after June 15, 2009. Therefore, the amended petition was not filed within the one year limitation period. While leave to amend is freely given pursuant to Fed.R.Civ.P. 15(a) when an amendment is filed before a responsive pleading is served, here, petitioner filed his motion without leave of court after the Government's response. Although in the interest of justice, leave to amend is freely given where justice so requires, see Fed.R.Civ.P 15(a)(2), because this claim does not "relate back" to the original motion, it falls outside of the one-year statute of limitations and is time-barred. Pursuant to Rule 15(c), untimely claims raised in an amendment "relate back" to the date of the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed.R.Civ.P. 15(c)(2). The Supreme Court held that "relation back" is proper only where "the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). Petitioner's original motion involved facts relating to his sentencing and effectiveness of counsel. This claim involves facts relating to his waiver of appellate and collateral attack rights. It is not "tied to a common core of operative facts" and thus "relation back" is not proper. Despite that, and the fact that it is a pre-plea claim of ineffective assistance of counsel, review of which would ordinarily be barred by petitioner's plea agreement waiver of collateral attack rights, because it calls into question the validity of § 2255 waiver itself, it is not waivable. Braxton, supra at 503.

**that?**

THE DEFENDANT: **Yes.**

THE COURT: **Now, that means to you as a practical matter, Mr. Bennett, is if you're in jail awaiting transportation to a Bureau of Prison or you're in a Bureau of Prison and you decide you want to file an appeal or you want to file a motion, habeas motion, and you file it and the reviewing court looks at the transcript of today's proceeding, your sentencing hearing and sees that your actual sentence was the equivalent of a base offense level guideline driven sentence at 26 or lower, the Court has a right to throw out your appeal, to throw out your habeas motion without ever giving you an opportunity to be heard because you gave up those rights under paragraph twelve**.

THE DEFENDANT: **Yes, I understand**.

THE COURT: **And is that what you intended to do?**

THE DEFENDANT: **Yes sir**.

THE COURT: **And did you make that decision yourself or was that a decision that was forced on you by your attorney?**

THE DEFENDANT: **I made that decision myself**.

. . .

THE COURT: How many times would you say that you and Mr. Wallace got together either in person or on the phone and talked about your case?

THE DEFENDANT: A half dozen times probably.

THE COURT: **During those occasions were you able to ask Mr. Wallace questions and did he answer your questions?**

THE DEFENDANT: **Yes.**

THE COURT: **Is there anything you asked Mr. Wallace to do for you which you think he improperly refused to do for you?**

THE DEFENDANT: **No.**

THE COURT: **Is there any question you asked him which he did not answer?**

THE DEFENDANT: **No.**

THE COURT: **Are you completely satisfied with the legal assistance, counseling [sic], advice and the actions that Mr. Wallace has given to you in this case?**

THE DEFENDANT: **Yes.**

THE COURT: **Can you think of anything that Mr. Wallace should have done and did not do in your behalf?**

THE DEFENDANT: **No.**

THE COURT: **As you look back on what he did, is there anything that he did do that you regret him doing?**

THE DEFENDANT: **No sir**.

THE COURT: **The plea agreement that you have entered into with Ms. Morgan's office, do you still have a copy of it in front of you**?

THE DEFENDANT: Yes.

THE COURT: **Did you have an opportunity to read and fully discuss that written plea agreement with Mr. Wallace before you signed it?**

THE DEFENDANT: **Yes sir**.

. . .

THE COURT: **Do you understand the terms of the plea agreement now?**

THE DEFENDANT: **Yes sir**.

THE COURT: **Did you understand the terms of the plea agreement when you signed it?**

THE DEFENDANT: **Yes sir**.

THE COURT: **Is there anything about your understanding of those terms that has changed between the time you signed it and today?**

THE DEFENDANT: **No**.

THE COURT: **Is there any term or provision in that agreement that you now want some time to privately discuss with your attorney before I go forward with this plea hearing?**

THE DEFENDANT: **No, I understand it.**

(Dkt.# 840 at 20 - 24) (emphasis added).

The record simply does not support petitioner's claim that counsel failed to explain the waiver of appellate and collateral attack rights. "Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992). Petitioner has presented no evidence to suggest that his representations during his plea were untruthful or involuntary, and therefore, he is bound by his sworn statements. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Accordingly, these claims should be denied.

**Ground Four: Whether Petitioner's Plea was Intelligent and Voluntary.**

Petitioner's Ground Four claim, also raised for the first time in his reply, is that his plea was not intelligent and voluntary because he "did not understand the essence of it." (Dkt.# 847 at 2.) He contends that the "totality of his kenning, was that he was going to be sentenced only on the plea itself, without any addition of the now apparent total offense conduct and relevant conduct." (Id.).

A guilty plea, and any waiver made pursuant to it, must be made knowingly, voluntarily, and intelligently. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed. 2d 274 (1969); Bryant v. Cherry, 687 F.2d 48, 49 - 50 (4th Cir. 1982), cert. denied, 459 U.S. 1073 (1982). In order to plead voluntarily, a defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed. 2d 437

(1984); <u>U.S. v. White</u>, 366 F.3d 291, 298 (4th Cir. 2004).  Pursuant to Rule 11 of the Federal Rules of

Criminal Procedure, before a court accepts a guilty plea, the court must determine that the defendant is

competent to enter the plea and that the plea is knowing and voluntary. Rule 11 requires that the court

personally inform the defendant of, and ensure that he understands, the nature of the charges against him

and the consequences of his guilty plea.  <u>United States v. Damon</u>, 191 F.3d 561, 564 (4th Cir. 1999).  In

doing so, the Court must advise the petitioner of the rights he is giving up by pleading guilty.  Rule

11(b)(1).  Moreover, the Court must discuss the nature of the charges against the petitioner, the penalties

that could be imposed, and certain other terms or conditions of the plea agreement.  <u>Id.</u>  The Court must

then establish that the petitioner is entering the plea voluntarily -- without force, threats, or promises made

outside the agreement.   Rule 11(b)(2).

This claim, although raised after the one-year time limitation of AEDPA, is not time-barred,

because it relates back to petitioner's Ground Two claim made in his original petition. Further, claims of

ineffective assistance of counsel that call into question the validity of the plea itself are not waivable.

<u>Braxton</u>, *supra* at 503.

Petitioner's contention that his plea was not intelligent and voluntary because counsel never

explained the impact of his prior criminal history and relevant conduct on his future sentence is belied by

his own sworn testimony at the Rule 11 hearing. After verifying with petitioner that counsel had in fact

explained all the terms of the plea agreement in detail with him, the Court went on to specifically reiterate

the impact of petitioner's criminal history and his drug relevant conduct to him anyway:

> THE COURT: Do you understand that any guideline driven sentence or any actual
> sentence that may be imposed within the statutory maximum, maybe increased if you had
> prior firearm offense convictions, prior violent felony offense convictions, even prior drug
> offense convictions, whether they be state or federal?  **In other words, your criminal
> history, if any, follows you and may be taken into consideration?**
>
> THE DEFENDANT: **Yes I understand**.

. . .

THE COURT: Is there anything about the possible consequences of your guilty plea that I've gone over with you so far that you need me to go over again or you need to discuss with your attorney?

THE DEFENDANT: No sir, I understand it.

THE COURT: **Now you've indicated to me you and Mr. Wallace discussed the uniform sentencing guidelines and I'm holding up a yellow chart and I know it may be difficult for you to see but your attorney's [sic] pulling out a similar chart. Did you go over this chart with your attorney**?

THE DEFENDANT: Yes sir.

THE COURT: And did your attorney indicate to you where you might fall on that chart with respect to your Criminal History Category and your offense level?

THE DEFENDANT: Yes sir.

. . .

THE COURT: **Did you fully understand that because he showed you where you might fall on that guideline chart, that you can't take his showing you that as a promise or a guarantee to you that the District Judge will impose an actual sentence which is the same as what he showed you?**

THE DEFENDANT: **Yeah. Yeah he explained all that to me. Yeah**.

THE COURT: **In fact, the guidelines aren't mandatory on the District Judge and she can impose an actual sentence anywhere up to the maximum sentence as is fair and reasonable under the law and facts of your case and you understand that, correct, Mr. Bennett?**

THE DEFENDANT: **Yes sir**.

(Id. at 29 and 29 - 31) (emphasis added).

After the Government witness testified in detail about petitioner's participation in the charged offense and the controlled buys he made in the underlying drug offense, petitioner testified that there was nothing with which he disagreed in the witness' testimony. (Id. at 39). When asked by the Court whether he understood that the amount of drugs proven as relevant conduct would be taken into account at his

sentencing, petitioner replied "Yes sir." (Id. at 39 - 40). Based on this exchange, the Court finds even

if there had been any misinformation given to petitioner by his counsel, it was corrected by the Rule 11

colloquy such that it did not prejudice petitioner's decision to plea. Moreover, a further review of the plea

hearing transcript reveals that petitioner specifically testified as to the voluntariness of his plea:

> THE COURT: **Has anyone attempted in any way to force you to plead guilty**?
>
> THE DEFENDANT: **No.**
>
> THE COURT: **Has anyone threatened you in order to get you to plead guilty**?
>
> THE DEFENDANT: **No sir.**
>
> THE COURT: **Has anyone threatened anyone who is close to you personally, such as a relative, and I know there's a relative named with you in this particular Count of the indictment? Has anyone threatened anyone in order to induce you or convince you to plead guilty**?
>
> THE DEFENDANT: **No sir.**
>
> THE COURT: **Is your decision to plead guilty your own free and voluntary act, Mr. Bennett?**
>
> THE DEFENDANT: **Yes.**
>
> THE COURT: **Other than what is contained in that written agreement, has anyone offered you or promised you anything in order to get you to plead guilty**?
>
> THE DEFENDANT: **No sir.**

(Id. at 26 - 27) (emphasis added).

The undersigned finds petitioner voluntarily entered into the plea agreement because petitioner

was made fully aware of the consequences of his plea - including maximum terms of imprisonment - and

there is no evidence his plea was induced by threats or misrepresentation. See Brady v. United States, 397

U.S. 742, 755 (1970) [holding a plea of guilty entered by one fully aware of the direct consequences must

stand unless induced by threats or misrepresentation]. At the hearing, despite petitioner's unsupported

reply claim that his "plea agreement was handed to him, with directions to sign it and that is what he

did[,]" (Dkt.# 847 at 2) Magistrate Judge Kaull fully informed petitioner of the impact of his prior criminal history and drug relevant conduct on his future sentence and ensured that petitioner had read and understood the agreement.  Finally, in response to Magistrate Judge Kaull's question as to whether anyone forced him to sign the agreement or made any promises or assurances other than those contained in the plea agreement in order to get him to sign, petitioner  repeatedly denied under oath that anyone had forced, coerced, or threatened him into pleading guilty.  He has presented no evidence to suggest that his representations during his plea were untruthful or involuntary.  Again, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."  Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

This claim lacks merit and should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that petitioner's §2255 motion (Dkt.# 832) be **DENIED and dismissed with prejudice** from the docket.

Therefore, petitioner's request that his plea and sentence be set aside should be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S.

1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record as applicable.

DATED: June 2, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE